UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

KAYWAN WALLACE,

              Defendant.
------------------------------------------------------------X

**DECISION & ORDER**
06-CR-122-2 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:** Kaywan Wallace ("Petitioner") brings a motion seeking compassionate release or a reduction or modification of his sentence pursuant to the First Step Act and 18 U.S.C. § 3582(c). Mot. to Reduce Sentence, ECF No. 332 ("Mot."); Supp. Mot. to Reduce Sentence, ECF No. 353 ("Supp. Mot."). For the reasons discussed below, Petitioner's motion is DENIED.

## PROCEDURAL HISTORY

On April 1, 2008, a grand jury returned a superseding indictment charging Petitioner with the following counts: racketeering, in violation of 18 U.S.C. § 1962(c); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); assault in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(3); conspiracy to distribute cocaine base, in violation of 18 U.S.C. §§ 846 and 841(b)(1)(A)(iii); conspiracy to maintain a stash house, in violation of 18 U.S.C. §§ 846 and 856(b); distribution and possession with the intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (two counts); and use of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (two counts). Superseding Indictment at 3–16, ECF No. 144. The Superseding Indictment charged twelve racketeering acts as part of Count One. *Id.* at 4–10.

On April 11, 2008, Petitioner pled guilty to Counts One, Two, Three, Four, and Five of the Superseding Indictment, which charged racketeering, racketeering conspiracy, assault in-aid-of racketeering, conspiracy to distribute cocaine base, and conspiracy to maintain a stash house, respectively. ECF No. 152; Superseding Indictment at 3–13. With respect to Count Four,

1

conspiracy to distribute cocaine base, the Superseding Indictment charged the offense as one that "involved 50 grams or more of a substance containing cocaine base." Superseding Indictment at 13. On September 11, 2008, the late Honorable David G. Trager sentenced Petitioner to an agreed-upon sentence of twenty-four years' incarceration and five years' supervised release. ECF No. 196.

On March 18, 2019, Petitioner, proceeding *pro se*, submitted a motion to reduce his sentence pursuant to the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"). Mot. at 1. On June 7, 2019, the Government filed an opposition, arguing Petitioner was not eligible for relief under the First Step Act and, even if he was, the Court should deny the motion. Gov't Response in Opp. to Mot. to Reduce Sentence at 3–8, ECF No. 336 ("Gov't First Opp."). On July 1, 2019, Petitioner filed a reply, arguing he was entitled to relief and the Court should reduce his sentence. Pet'r's Reply at 2–4, ECF No. 338 ("Reply"). On April 30, 2020, Petitioner, this time through counsel, submitted a motion to amend and supplement the original *pro se* motion, arguing Petitioner is eligible for relief under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act. Supp. Mot. at 2. On May 13, 2020, the Government filed a second reply, arguing Petitioner is not eligible for relief under the First Step Act, has failed to exhaust his administrative remedies, and, nonetheless, has not presented an extraordinary or compelling reason for his release. Gov't Response in Opp. to Supp. Mot. at 4–16, ECF No. 356 ("Gov't Second Opp."). The Government also argues the factors under 18 U.S.C. § 3553(a) demonstrate Petitioner should complete his term of imprisonment. *Id.* at 15–16.

## THE COVID-19 CRISIS

Beginning in late February 2020, a new viral infection, COVID-19 has swept into the United States. Derrick Bryson Taylor, *A Timeline of the Coronavirus Pandemic*, N.Y. Times

(August 6, 2020), https://www.nytimes.com/article/coronavirus-timeline.html.  Since arriving in the United States "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent."  *United States v. Stephens*, 15-CR-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (Nathan, J.).  The novel infection has been found to affect more severely certain groups of people, significantly increasing their risk of death.  *Coronavirus Disease 2019*, Ctr. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited August 13, 2020).

In particular, prison populations have been identified as being a potential hotspot for outbreaks of the virus.  *See generally* Tom McParland, *Pressure Grows to Better Address Bail Applications as COVID-19 Hits NY Federal Jails*, N.Y. Law Journal (Mar. 25, 2020, 06:11 P.M.), https://www.law.com/ newyorklawjournal/2020/03/25/pressure-grows-to-better-address-bail-applications-as-covid-19-hits-ny-federal-jails/; Emma Brown & Dalton Bennett, *'Disaster waiting to happen': Thousands of inmates released as jails and prisons face coronavirus threat*, Washington Post (Mar. 25, 2020, 06:00 AM), https://www.washingtonpost.com/national/disaster-waiting-to-happen-thousands-of-inmates-released-as-jails-face-coronavirus-threat/2020/03/24/761c2d84-6b8c-11ea-b313-df458622c2cc_story.html.  As of August 12, 2020, nationwide the Federal Bureau of Prisons ("BOP") reports 1,208 confirmed cases of and 9,810 recoveries from COVID-19 among federal inmates as well as 560 confirmed cases of and 807 recoveries from COVID-19 among staff.  Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited August 13, 2020).

On March 13, 2020, the BOP issued a COVID-19 Action Plan to reduce the spread and transmission of the virus.  Fed. Bureau of Prisons, Bureau of Prisons COVID-19 Action Plan (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp ("BOP Action

3

Plan"). The BOP Action Plan suspended legal visits to inmates for 30 days but allowed for "case-by-case accommodation" at the local level and also specified "confidential legal calls will be allowed in order to ensure inmates maintain access to counsel . . . . If approved for an in-person visit, the attorney will need to undergo screening using the same procedures as staff." *Id.* On March 31, 2020, the BOP announced the implementation of Phase Five of its Action Plan, which includes securing all inmates "in their assigned cells/quarters to decrease the spread of the virus" for 14 days. COVID-19 Action Plan: Phase Five, Fed. Bureau of Prisons (Mar. 31, 2020, 06:30 P.M.), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. On April 14, 2020, the BOP extended the enhanced measures of Phase Five until May 18, 2020. Press Release, Fed. Bureau of Prisons, Bureau of Prisons COVID-19 Action Plan: Phase Six, https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf. On May 18, 2020, the BOP again extended the enhanced measures through June 30, 2020. Fed. Bureau of Prisons, Action Plan Phase VII (May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp. The BOP has continued the enhanced measures as part of its ongoing modified operations. BOP Implementing Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 13, 2020).

### **DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE OR REDUCTION OR MODIFICATION OF HIS SENTENCE**

On March 18, 2019, Petitioner filed a motion to reduce his sentence under the First Step Act. Mot. at 1. On April 30, 2020, Petitioner filed a supplemental motion, seeking compassionate release or, in the alternative, reduction or modification of his prison term to allow him to serve the remainder of his sentence under home confinement pursuant to the First Step Act and 18 U.S.C. § 3582. Supp. Mot. at 2. Petitioner submits his chronic asthma is sufficient reason to grant early release from prison. *Id.* at 5–6.

4

**DISCUSSION**

I. **First Step Act**

In 2018, President Donald J. Trump signed the First Step Act into law, which, among other things, made the Fair Sentencing Act of 2010 ("Fair Sentencing Act") retroactive to defendants who had been sentenced prior to the passage of that statute. The Fair Sentencing Act sought to eliminate unwarranted sentencing disparities applicable to crack and powder cocaine offenses. As relevant here, it increased the amount of crack cocaine necessary to trigger a mandatory ten-year minimum term of imprisonment from fifty to 280 grams. *See* 21 U.S.C. § 841(b)(1)(A). An amount greater than twenty-eight grams, but less than 280 grams triggers only a five-year mandatory minimum term of imprisonment. *Id.* § 841(b)(1)(B).

Section 404 of the First Step Act allows a court, in its discretion, to impose a reduced sentence for defendants convicted of a "covered offense . . . as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). The Second Circuit recently held "it is a defendant's statutory offense, not his or her 'actual' conduct, that determines whether he has been sentenced for a 'covered offense' within the meaning of Section 404(a), and is consequently eligible for relief under Section 404(b)."[1] *United States v. Johnson*, 961 F.3d 181, 190 (2d Cir. 2020). However, even where a defendant is eligible for relief under the First Step Act, a court is not required to reduce a

---

[1] The Court notes the parties, particularly the Government, devoted substantial time to this point in their motion papers, which is now moot following the Second Circuit's decision in *Johnson*. The Government, in keeping with their previous contention, argued Petitioner was not eligible for relief under the First Step Act because Petitioner's plea agreement noted "the offense involved over 4.5 kilograms of cocaine base." Gov't Second Opp. at 3; Ex. C to Gov't First Opp. ("Plea Agreement"). The Government argued a defendant's "actual conduct" determines eligibility for First Step Act relief, and therefore Petitioner is ineligible because, by his own admission, his offense involved a more than sufficient quantity of cocaine base (4.5 kilograms) to trigger the ten-year mandatory minimum under the original and revised statutory scheme, despite the fact the Superseding Indictment only charged him with conspiracy to distribute 50 grams or more of cocaine base. Gov't Second Opp. at 5–8. The Second Circuit has now ruled this contention is incorrect, and the Court rejects it accordingly.

sentence and maintains the discretion to deny such relief. First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); *Johnson*, 961 F.3d at 191 ("Section 404 relief is discretionary, after all, and a district judge may exercise that discretion to deny relief where appropriate.").

This case presents the situation foreseen by the Second Circuit in *Johnson* where a defendant is eligible for relief under the First Step Act, but relief is not appropriate. *See Johnson*, 961 F.3d at 191. Here, Petitioner is eligible for relief under the First Step Act as the statutory penalties for his crime of conviction, conspiracy to distribute fifty grams or more of cocaine base, were changed to require a substantially higher quantity of drugs to trigger a ten-year mandatory minimum sentences. Had the Fair Sentencing Act been in effect at the time of Petitioner's sentencing, he would have been subject to only a five-year mandatory minimum on that count instead of a mandatory ten-year minimum. Petitioner therefore argues he should be resentenced on all counts. Supp. Mot. at 8–9. The Court disagrees.

This argument ignores the realities of Petitioner's crimes and sentence. As detailed in the Presentence Investigation Report ("PSR"), Petitioner and his associates engaged in brutal behavior in furtherance of their criminal enterprise. PSR ¶¶ 24–64, ECF No. 358-1 (filed under seal). Their criminal activities included murder, attempted murder, conspiracy to murder, assault, and drug trafficking. *See id.* To give just one example of the viciousness of Petitioner's enterprise, in 2005 Petitioner went to the apartment of an associate demanding money the associate owed Petitioner relating to drug sales. *Id.* ¶ 54. When the associate could not produce the money, Petitioner and his brother took her to a bedroom, beat her, and sodomized her with a broomstick while another associate looked on. *Id.*

6

While it is true Petitioner was subject to a ten-year mandatory minimum on the conspiracy to distribute charge, his Guideline sentence on all charges was life imprisonment. Faced with this reality, Petitioner agreed to a sentence of twenty-four years' imprisonment, which the sentencing court imposed. Even accepting Petitioner's new calculated offense level of 42, Supp. Mot. at 8, this sentence represents a significant departure from the Guidelines range of 360 months to life imprisonment. Moreover, although the Government only charged the quantity necessary to trigger the maximum penalty at the time of indictment, the PSR and the Plea Agreement establish Petitioner's drug activity far exceeded the threshold quantity both before and after the First Step Act. PSR ¶ 157 (stating Petitioner is accountable for 20.59 kilograms of crack-cocaine); Plea Agreement ¶ 3 (stating Petitioner "agrees the offense involved over 4.5 kilograms of cocaine base). The Court has little doubt the Government would have charged and proven the threshold quantity to trigger the heightened sentence. Therefore, given the violent nature of Petitioner's crimes and the practical realities of his case, a further reduction in Petitioner's sentence is not warranted.

Accordingly, the Court DENIES Petitioner's motion for relief under the First Step Act.

## II. Compassionate Release

The Court also maintains the discretion to reduce a previously imposed sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)—commonly referred to as the "compassionate release" statute—where the Court finds, after considering the section 3553(a) factors, "extraordinary and compelling reasons warrant such a reduction" in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Following the passage of the First Step Act, a defendant is permitted to bring a motion under this section, instead of requiring a motion of the BOP. First Step Act § 603(a), 132 Stat. at 5239. The defendant bears the burden of demonstrating extraordinary and compelling reasons to reduce

his sentence exist. *United States v. Lisi*, 440 F. Supp. 3d 246, 249 (S.D.N.Y. 2020) (Failla, J.). If the Court determines the section 3553(a) factors warrant continued imprisonment, it may decline to reduce a sentence even if an incarcerated person has exhausted his appeals to the BOP[2] and extraordinary and compelling reasons exist.

The BOP and United States Sentencing Guidelines ("USSG") have established criteria for determinations of what may satisfy the "extraordinary and compelling reasons" requirement of the statute. U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13; BOP Program Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, https://www.bop.gov/policy/progstat/5050_050_EN.pdf ("BOP Program Statement 5050.50"). "A defendant's medical condition may justify a sentencing reduction if (a) the defendant has a 'terminal illness' or (b) the condition 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and [is a condition] from which he or she is not expected to recover.'" *United States v. Wright*, 17-CR-695, 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (McMahon, C.J.) (quoting USSG § 1B1.13, Application Note 1(A)).

Here, Petitioner argues he qualifies for compassionate release because he suffers from chronic asthma. Supp. Mot. at 4–6. In support of his motion for compassionate release, Petitioner cites general background information regarding asthma and COVID-19 as well as similar cases he views as instructive on his request.[3] *Id.* The only statement pertaining

---

[2] The Court notes Petitioner conceded he has not exhausted his BOP remedies in this case and asks the Court to waive the requirement in light of the circumstances. Supp. Mot. at 3. The Court will not address the exhaustion or non-exhaustion of BOP remedies because the motion is denied on the merits. Nothing in this Decision & Order shall be construed as holding an incarcerated individual is not required to exhaust BOP remedies prior to seeing compassionate release under 18 U.S.C. § 3582.

[3] Petitioner relies heavily on the case of *United States v. Hernandez*, 2020 WL 1684062, __ F. Supp. 3d __ (S.D.N.Y. 2020) (Engelmayer, J.). In that case, Judge Engelmayer granted compassionate release to an incarcerated individual who suffers from asthma. However, outside suffering from asthma, there are no parallels between

8

specifically to Petitioner reads, "[s]ince his childhood, [Petitioner] has suffered from chronic obstructive pulmonary disease and chronic asthma." *Id.* at 5. Petitioner provides no other information regarding his condition, medication, or treatment history. Petitioner only cites the sentencing transcript to demonstrate the sentencing court was aware of his asthma condition and his use of an inhaler. Ex. C to Supp. Mot. at 11, ECF No. 353-1.

Petitioner's argument fails as he has not met the burden of establishing an "extraordinary and compelling" reason for compassionate release. First, chronic asthma does not rise to the level of a terminal illness, nor has Petitioner presented evidence his condition "substantially diminishes [his] ability . . . to provide self-care within the environment of [his] correctional facility." USSG § 1B1.13, Application Note 1(A). Further, as of August 12, 2020, the BOP reports zero cases of COVID-19 within FCI McKean, where Petitioner is currently incarcerated. *See* COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/. While the Court is cognizant of the severity of the current pandemic, particularly as it relates to incarcerated individuals, general risks and concerns of potentially contracting COVID-19—particularly in a facility that has not seen a single case of the virus—do not constitute an extraordinary and compelling reason warranting a reduction in Petitioner's sentence. *See United States v. Poncedeleon*, 18-CR-6094, 2020 WL 3316107, at *3 (W.D.N.Y. June 18, 2020) (Geraci, C.J.) (denying motion for compassionate release for individual with asthma, stating, "Without the risk of complications, the mere possibility of exposure to COVID-19 does not favor release.").

---

*Hernandez* and the present case. Mr. Hernandez was sentenced to a mere twenty-four *month* prison term, *Hernandez*, 2020 WL 1684062, at *1, as opposed to the twenty-four *year* sentence imposed upon Petitioner. Mr. Hernandez was set to be released on August 1, 2020; in effect, Judge Engelmayer's ruling only relieved Mr. Hernandez of four months of imprisonment (one-sixth of his original term). Here, Petitioner seeks to be released, by the Government's calculation, almost eight years early. Gov't Second Opp. at 16. Moreover, Mr. Hernandez was housed at a "municipal jail" where the risk of transmission is high, *Hernandez*, 2020 WL 1684062, at *3, whereas Petitioner is housed in a federal penitentiary with zero cases of COVID-19. *See* COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/. Petitioner is not similarly situated to Mr. Hernandez and will not be granted similar relief.

9

Lastly, while the Court commends Petitioner's continued education and leadership roles while incarcerated, rehabilitation alone is not an extraordinary and compelling reason warranting a reduction in Petitioner's sentence. *United States v. Almontes*, 05-CR-58, 2020 WL 1812713, at *8 (D. Conn. Apr. 9, 2020) (Underhill, J.).

      Moreover, even assuming *arguendo* Petitioner did establish an extraordinary and compelling reason warranting a reduction in his sentence, the factors enumerated in section 3553(a), discussed above, weigh in favor of Petitioner completing his sentence. The sentencing court considered the section 3553(a) factors and determined a sentence of twenty-four years' incarceration, a sentence agreed upon by the Government and Petitioner, was appropriate. The same remains true today. As detailed above, Petitioner's crimes were of the utmost seriousness and enormously violent. He was the leader of a dangerous racketeering enterprise specializing in drug distribution and unafraid to ruthlessly protect its turf and enforce its terms. As stated above, even accepting Petitioner's calculated offense level of 42, Supp. Mot. at 8, the Guidelines recommend a sentence of 360 months to life imprisonment. The section 3553(a) factors do not support a reduction in Petitioner's sentence, and only serve to reinforce the conclusion Petitioner's sentence of twenty-four years' incarceration and five years' supervised release is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

      Accordingly, the Court DENIES Petitioner's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

## **CONCLUSION**

For the foregoing reasons, Petitioner's motion for compassionate release or a reduction or modification of his sentence pursuant to the First Step Act and 18 U.S.C. § 3582(c), ECF Nos. 332, 353 is DENIED.  The Clerk of Court shall terminate the motion pending at ECF No. 325 as moot.

**SO ORDERED.**

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 13, 2020
      Brooklyn, New York